# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN M. VILLAVICENCIO,<br><br>                    Plaintiff,<br>vs.<br><br>MICHAEL J. ASTRUE,<br><br>                    Defendant. | CASE NO. 11cv836-LAB (MDD)<br><br>REPORT AND RECOMMENDATION RE: CROSS MOTIONS FOR SUMMARY JUDGMENT<br>[Doc. Nos. 15 & 16] |

      This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

## I.    Procedural History

      On November 30, 2007, Plaintiff Kathryn Villavicencio filed a claim under Title II of the Social Security Act alleging disability as of March 2, 2007, and seeking disability insurance benefits. (A.R. at 137). On April 9, 2008, the Commissioner denied Plaintiff's claim. (A.R. at 74). Plaintiff's request for reconsideration was also denied. (A.R. at 82). Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and a hearing was held on March 12, 2010. (A.R. 31-70). On April 23, 2010, the ALJ issued a written decision finding that Plaintiff was not disabled. (A.R. at 14). Plaintiff appealed, but the Appeals Council denied review. (A.R. at 6).

1   On April 20, 2011, Plaintiff filed her Complaint with this Court. (Doc. No. 1). Defendant filed an answer on September 15, 2011. (Doc. No. 11). Plaintiff filed a Motion for Summary Judgment on November 15, 2011 (Doc. No. 15), and Defendant filed a Cross-Motion for Summary Judgment on December 5, 2011. (Doc. No. 16). Defendant also filed a Response in Opposition to Plaintiff's Motion on December 5, 2011 (Doc. No. 17).

## II.   Statement of the Facts

On November 28, 2007, Plaintiff filed an application under Title II for a period of disability and disability insurance benefits alleging disability beginning March 2, 2007. Plaintiff's claim was denied on April 9, 2008 and upon reconsideration on July 24, 2008. (AR at 17). Plaintiff requested a hearing on September 16, 2008. A hearing was held before an Administrative Law Judge (ALJ) on March 12, 2010 at which Plaintiff testified. Id. Also testifying at the hearing were Dr. Charles M. Plotz, an impartial medical expert, and Katie Macy-Powers, an impartial vocational expert. Id.

The ALJ issued a written decision on April 23, 2010. (AR at 17-25). The ALJ found that Plaintiff suffers from the following severe impairments: (1) major depression, moderate; and, (2) pain of unknown etiology. (AR at 19). After determining these medical impairments did not meet or equal any of the listed impairments in 20 C.F.R. part 404, subpart P, Appendix 1, the ALJ assessed Plaintiff's residual functional capacity. Id. at 19-20. The ALJ determined that Plaintiff had the capacity to:

> perform medium work activity, specifically, the claimant is able to lift and carry 50 pounds occasionally, 25 pounds frequently, stand/walk for six hours in an eight hour workday, with postural limitations to include frequent climbing, stooping, kneeling and crouching and mental functional limitations to include the ability to understand, carry out, and remember simple and complex instructions as well as interact with co-workers, supervisors, and the general public. The claimant is able to withstand the stress and pressures associated with an eight-hour workday and day-to-day activities (Exhibits 19F and 31F).

(Id. at 20). The ALJ also summarized the medical evidence on record. As there is no

dispute between the parties as to the objective medical records, the Court will provide only a brief summary of the medical record.

In 2004, Plaintiff was seen by Dr. Boris Khamishon, a neurologist, after complaining of stress related headaches. (AR 297-340). Plaintiff complained of right-sided numbness of unexplained etiology, but all clinical findings were negative. Plaintiff was started on new medications for her headaches. Id.

On December 15, 2006, Plaintiff saw Dr. Christopher Glazener. (AR at 258). Plaintiff was given steroid injection therapy for right low back, leg, and thoracic pain. Id. Plaintiff initially responded well to the treatment and her low back pain improved, but Plaintiff later returned with complaints of pain on her left side. Id. Plaintiff underwent a repeat procedure on January 2, 2007. Id. Plaintiff returned again on January 22, 2007, and reported that the pain in the mid to upper thoracic area was much improved, especially on the left side. Id. A repeat injection was performed on the right side.

In November 2006, Plaintiff saw Dr. M. Hertzel Soumekh after complaining of lower thoracic spine pain. The examination revealed pain with motion of the spine. In January 2007, Plaintiff returned and showed improvement after a thoracolumbar epidural block. In April 2007, Plaintiff returned with complaints of severe back pain. An MRI was ordered, but Dr. Soumekh was unable to find any cause for the spinal pain.

On January 18, 2007, Dr. Khamishon provided progress notes indicating that Plaintiff's headaches had ceased for two months. Further progress notes from May 30, 2007, indicated that Plaintiff's headaches were better after Botox treatments.

On June 12, 2007, Dr. Corey Marco reported that Plaintiff had been placed in a pain-management program for chronic pain and headache pain. Plaintiff's migraines became less frequent, and Plaintiff was referred to long-term pain management for spinal pain. Further treatment notes indicated that Plaintiff reported relief from her chronic pain following facet joint injection at the thoracolumbar junction.

1    Plaintiff also underwent weekly psychotherapy sessions with Dr. Chad Cox, M.A., P.A., beginning on June 14, 2006. On August 3, 2007, Plaintiff reported improved mood and decreased symptoms of agoraphobia and decreased safety concerns. Further improvement was expected.

On March 20, 2008, Plaintiff saw Dr. Mounir Soliman, a psychologist and neurologist for a consultation after complaining of depression, panic attacks, and agoraphobia. Plaintiff was diagnosed with major depression, moderate, and an anxiety disorder. Dr. Soliman opined that, from a psychiatric standpoint, Plaintiff could work an eight-hour day.

On November 2, 2009, Plaintiff saw Phong T. Dao, D.O., a board eligible internist, for an internal medical evaluation of her complaints of a history of lupus and Sjogren's syndrome. Plaintiff claimed that she had an eight year history of lupus for which she takes medication. Plaintiff also complained of chronic fatigue and joint pain. Examination revealed that Plaintiff's range of motion was normal in her upper and lower extremities, and neurological examination revealed no significant abnormalities.

On January 21, 2010, Dr. William L. Wilson stated that Plaintiff reported significant relief in her pain, decreased muscle spasm and cramping, and increased daily activities.

**III.    Legal Standard**

The supplemental security income program established by Title XVI of the Act provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1383. To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage is any kind of substantial gainful work that exists in the national economy.

1  42 U.S.C. § 1382(a)(3)(B).

2  The Commissioner makes this assessment through a five-step analysis. First,
3  the claimant must currently be not working. 20 C.F.R. § 416.920(b). Second, the
4  claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the
5  medical evidence of the claimant's impairment is compared to a list of impairments
6  that are presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If the
7  claimant's impairment meets or equals one of the listed impairments, benefits are
8  awarded. 20 C.F.R. § 416.920(d). Fourth, if the claimant can do his past work,
9  benefits are denied. 20 C.F.R. § 416.920(e). Fifth, if the claimant cannot do his past
10 work and, considering the claimant's age, education, work experience, and residual
11 functional capacity, cannot do other work that exists in the national economy,
12 benefits are awarded. 20 C.F.R. § 416.920(f). The last two steps of the analysis are
13 required by statute. 42 U.S.C. § 1382(a)(3)(B).

14 In addition, when evaluating the severity of a claimant's alleged mental
15 impairments, the Commissioner uses a "special technique" at each level of the review
16 process. 20 C.F.R. § 416.1520a. In order to be considered disabled under the Act, the
17 claimant must have: (1) a medically determinable mental impairment(s), 20 C.F.R. §
18 416.1520a(b)(1)[4], and (2) exhibit specified functional limitations as a result of that
19 impairment(s) that prohibit the claimant from engaging in any gainful activity. 20
20 C.F.R. § 416.1520a(b)(2). If the claimant has a medically determinable mental
21 impairment but does <u>not</u> exhibit the requisite functional limitations, the claimant
22 may nevertheless still be considered disabled if the claimant exhibits clusters of
23 symptoms or a syndrome that indicate the inability to engage in gainful activity. 20
24 C.F.R. § 404.1520a(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.A. (impairment(s)
25 must either pose functional limitations or cause symptoms or a syndrome to support

---

[4]There are nine diagnostic categories that the Act considers to be medically determinable mental impairment(s): Organic mental disorders (12.02); schizophrenic, paranoid, and other psychotic disorders (12.03); affective disorders (12.04); mental retardation (12.05); anxiety related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10). 20 C.F.R.Pt. 404, Subpt. P, App. 1 § 12.00.A.

a finding of disabled). Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 1383(c)(3), 405(g). The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433(9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. Sandqathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576, (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. Id. (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983)).

Even if the reviewing courts finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. Benitez v.

Califano, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. Id.

## IV. Discussion

In her Motion, Plaintiff asserts that the ALJ committed two reversible errors. (Doc. No. 15 at 3). First, Plaintiff contends that the ALJ improperly discredited Plaintiff's testimony regarding her symptoms and physical limitations. Id. at 4. Second, Plaintiff contends that the ALJ failed to consider lay witness testimony provided by Jennifer Podwoski. Id. at 12. In his Cross-Motion, Defendant counters that the ALJ provided sufficient reasons to discredit Plaintiff's testimony and that the ALJ's failure to discuss Ms. Podwoski's testimony is harmless error. (Doc. No. 16 at 2). The Court addresses each argument in turn.

### A. The ALJ's Credibility Determination of Plaintiff

Plaintiff asserts that the ALJ erred by discrediting Plaintiff's testimony regarding her functional capacity. (Doc. No. 15 at 4). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms. (AR at 23). The ALJ also found, however, that Plaintiff's statements regarding the "intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." Id.[5] The ALJ assessed Plaintiff's credibility as follows:

> The claimant told Dr. Soliman that she is able to cook, clean, shop, and run errands as well as care for her own personal hygiene and financial responsibilities. However, she told Dr. Dao that she has symptoms of chronic fatigue with joint pain, and she spends most of

---

[5] Plaintiff erroneously contends that the ALJ did not perform the mandated two-step analysis required by Social Security Ruling 96-7p. Under that ruling, the commissioner must first determine if there is a medical impairment that could cause the claimant's pain or other symptoms, and then evaluates the intensity, persistence, and limiting effects of those symptoms to determine their effect on the claimant's abilities to perform work activities. Here, the ALJ expressly followed the two-step approach, noting first that the medically determinable impairments could reasonably cause Plaintiff's alleged symptoms, and then considering the Plaintiff's statements regarding her symptoms' intensity, persistence, and limiting effects. (AR at 23-24).

> her day lying down to relieve symptoms and relies on other family members to perform household chores and do laundry. The record reflects that the claimant has been receiving conservative treatment, specifically ongoing psychotherapy, pharmaceutical intervention as well as epidural facet injections, for her impairments which have been successful in providing relief, and her medications resolve symptoms with no reported disabling side effects. The medical expert, Dr. Plotz testified that: the record does not reveal any objective evidence of record that she has been diagnosed with Sjogrens or lupus; there are no diagnostic laboratory findings confirming a diagnosis of lupus; he does not see a psychiatric confirmation of bipolar disease; the record reflects that the claimant takes large amounts of opiates, and opium itself, for back pain, and the medical records do not reveal any clinical physical reason for her to be in pain; the claimant's benzodiazepine use should not be causing fatigue; the claimant is not limited from a physical point of view by any of her alleged impairments; there is no evidence in the record to support the claimant's allegations. Consequently, the claimant's allegations of disabling pain and limitation are inconsistent with the evidence of record and are not credible.

(A.R. at 24). Plaintiff acknowledges the ALJ listed some reasons for discrediting Plaintiff's statements, but contends that these reasons are legally insignificant.

Generally, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the agency. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982) (internal quotation marks omitted). The ALJ must provide "clear and convincing" reasons to reject a claimant's subjective testimony, by specifically identifying "what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir.1995).

An ALJ is not "required to believe every allegation of disabling pain" or other impairment. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, an ALJ must provide specific, cogent reasons for rejecting a plaintiff's testimony. Morgan v. Comm'r of Soc. Sec. Admin, 169 F.3d 595, 599 (9th Cir. 1999); Lester, 81 F.3d at 834. The reasons provided by the ALJ must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The factors that an ALJ may consider in deciding whether to reject a claimant's testimony are specified in the Social Security Administration rules, and the ALJ may not cite to reasons which do not comport with the Agency's rules. Orn v. Astrue, 495 F.3d 625, 635-37 (9th Cir. 2007). Those

reasons include "reputation for truthfulness, inconsistencies in the testimony or between testimony and conduct, daily activities, and unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment.'" Id. at 636 (citing Fair, 885 F.2d at 603).

Furthermore, even if one or more reasons listed by the ALJ are invalid, so long as the ALJ provides some valid reasons, the ALJ's credibility determination will be upheld. Bray, 554 F.3d at 1227; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162–63 (9th Cir. 2008); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195–97 (9th Cir. 2004).

### 1. Support in the Objective Medical Evidence

First, Plaintiff challenges the ALJ's conclusion that Plaintiff's statements are not supported by the objective medical evidence of record. (Doc. No. 15 at 6). Plaintiff states that such a determination is prohibited by the social security regulations. Id. at 7. Defendant counters that the ALJ may consider, in conjunction with other factors, whether the objective medical evidence supported Plaintiff's statements. (Doc. No. 16 at 5).

Where the ALJ has found that medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ may not reject a plaintiff's statements regarding the intensity or severity of pain or its effect on the ability to work solely because it is not supported by the objective medical evidence. 20 C.F.R. § 404.1529(c)(2). The ALJ may, however, reject a claimant's statements regarding symptoms so long as the ALJ provides specific findings stating clear and convincing reasons for doing so. Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (citing Lester, 81 F.3d at 834). The ALJ must specifically identify "what testimony is not credible and what evidences undermines the claimant's complaints." Parra, 481 F.3d at 750. For example, in Parra, the Ninth Circuit found that the ALJ could properly discount the claimant's complaint of bursitis-related knee pain where laboratory tests showed that knee function was within normal limits and where the

claimant was only receiving "conservative treatment." <u>Id.</u> at 750-51. Thus, while it is true that an ALJ may not discredit the plaintiff's subjective complaints of pain on a lack of medical evidence alone, the ALJ may consider the lack of objective medical findings in conjunction with other clear and convincing reasons. <u>Id.</u>

Here, the ALJ did not rely on the lack of medical evidence alone to discredit Plaintiff's statements. (AR at 24). The ALJ also noted that Plaintiff's statements regarding her daily activities conflicted with her statements regarding her symptoms, that Plaintiff's treatment had been conservative, and that medication had been effective in controlling Plaintiff's symptoms. (AR at 24). The ALJ was also specific regarding the objective evidence that undermined Plaintiff's complaints. <u>Id.</u> The ALJ noted that Dr. Plotz, a testifying medical expert, could find no reason that the Plaintiff should be in pain, and that diagnostic tests did not show any ailment which would explain Plaintiff's complaints of pain. <u>Id.</u>

Plaintiff herself notes that the ALJ provided additional reasons for discrediting Plaintiff's testimony. Thus, Plaintiff's argument that the ALJ erred by relying "solely" on the lack of objective medical evidence is without merit. While the ALJ cannot rely only the lack of objective medical evidence, the ALJ did not err by considering it along with the other clearly stated reasons.

### 2. **Plaintiff's Daily Activities**

Second, Plaintiff challenges the ALJ's conclusion that Plaintiff's statements are inconsistent with her reported daily activities. Plaintiff states that the ALJ improperly considered Plaintiff's ability to perform daily activities without explaining how it affected Plaintiff's credibility. (Doc. No. 15 at 8-9). Plaintiff contends that, even if she can perform some activity, nothing in these statements indicate that she can perform at an eight hour job, five days a week. (Doc. No. 15 at 9). Respondent counters that the ALJ was referring to the inconsistency in Plaintiff's statements as a grounds for questioning her credibility. (Doc. No. 16 at 4).

Plaintiff correctly notes that "[d]isability does not mean that a claimant must

vegetate in a dark room excluded from all forms of human and social activity." Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987). The ALJ may, however, discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.1999); Fair, 885 F.2d at 603. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. See Turner, 613 F.3d at 1225; Valentine v. Comm'r Soc Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009).

The Social Security regulations explicitly instruct the ALJ to evaluate the claimant's daily activities when determining the claimant's credibility. 20 C.F.R. § 404.1529(c)(3)(I); Social Security Ruling 96-7p. Furthermore, the ALJ is permitted to use "ordinary techniques of credibility evaluation" such as inconsistent prior statements when determining credibility. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

Here, the ALJ drew a direct comparison between Plaintiff's conflicting statements to Dr. Soliman and Dr. Dao. (AR at 24). Plaintiff told Dr. Soliman that she is able to cook, clean, shop, and run errands as well as care for her own personal hygiene and financial responsibilities. (AR at 525). She later told Dr. Dao that she has symptoms of chronic fatigue with joint pain, and she spends most of her day lying down. (AR at 605). Plaintiff stated that she relies on her daughter to do some of the chores, and relies on her mother to do her laundry. Id. While the statements are not directly contradictory, and were made more than a year apart from each other, they are inconsistent. It is not clear whether the ALJ discredited Plaintiff's statements because they conflict with the limitations she described or because they are inconsistent with each other. Either use, however, is a permissible consideration for the ALJ in determining the Plaintiff's credibility. Thus, the ALJ did not err in considering these inconsistencies along with the other specified factors.

### 3. Plaintiff's Conservative Treatment and the Effectiveness of Medication

Plaintiff does not address the two other rationales stated by the ALJ- that Plaintiff received only conservative treatment, and that Plaintiff's medication was effective in treating her symptoms. In their Motion, Defendants note that these two rationales further support the ALJ's finding that Plaintiff's statements were not credible. (Doc. No. 16 at 4-5).

The fact that the claimant only received conservative treatment is a valid ground for questioning claimant's statements regarding severity of pain or symptoms. Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995). Furthermore, the ALJ is permitted to consider the effectiveness of medication in treating Plaintiff's symptoms. Bunnell, 947 F.2d at 346; Social Security Ruling 88-13. Here, the ALJ identified the specific treatments Plaintiff received and explained that many of Plaintiff's symptoms had been relieved through treatment. (AR at 24). Accordingly, the ALJ was within her discretion to question Plaintiff's credibility regarding the severity and persistence of her symptoms. Johnson, 60 F.3d at 1434; Bunnell, 947 F.2d at 346. Both reasons represent clear and convincing reasons for questioning Plaintiff's credibility.

### 4. Conclusion

The ALJ did not err by discrediting Plaintiff's statements regarding the severity and persistence of her symptoms. While any of the above-listed reasons, on their own, may not be sufficient to support the ALJ's conclusion, taken together they represent clear and convincing reasons for questioning Plaintiff's credibility and are adequately supported by the record. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** on this ground and Defendant's Motion be **GRANTED**.

### B. The ALJ's Failure to Address Lay Witness Statement

In her Motion, Plaintiff contends that the ALJ committed reversible error by failing to consider testimonial evidence in the form of a questionnaire provided by Jennifer Podwoski regarding Plaintiff's functional ability. (Doc. No. 15 at 12).

1  Plaintiff asserts that such evidence must be considered, and although the ALJ need
2  not accept the evidence as true, the ALJ must provide specific reasons for discrediting
3  it. Id. In their Motion, Defendants acknowledge that the ALJ erred by failing to
4  address Ms. Podwoski's statement, but contend that this failure was harmless error
5  and that the ALJ's ultimate determination should stand. (Doc. No. 16 at 6).

6  In determining whether a claimant is disabled, an ALJ generally must consider
7  lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala,
8  12 F.3d 915, 919 (9th Cir.1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).
9  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects
10 ability to work is competent evidence ... and therefore cannot be disregarded without
11 comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996). Consequently,
12 "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons
13 that are germane to each witness." Dodrill, 12 F.3d at 919. The failure of the ALJ to
14 either consider the lay witness testimony or to provide a germane reason for rejecting
15 it is error. Molina v. Astrue, 674 F.3d 1104, 1121-22 (9th Cir. 2012).

16 Such error does not automatically require that the ALJ's decision be
17 overturned. Id. at 1122. In Molina, the Ninth Circuit stated

> We have not, however, required the ALJ to discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. See Valentine, 574 F.3d at 694 (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"). The applicable regulations are in accord; they require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, see 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness, see id.; see also SSR 06–03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").

27 674 F.3d at 1114 (citing Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011). If the
28 ALJ's failure to discuss testimony favorable to the claimant was "inconsequential to

the ultimate nondisability determination in the context of the record as a whole" then the failure is harmless error. <u>Molina</u>, 674 F.3d at 1122 (internal citations omitted). In <u>Molina</u>, the court concluded that even though the ALJ committed error by failing to discuss lay testimony from the claimant's family members, that error was harmless. <u>Id.</u> The court noted that the testimony did not describe limitations beyond what the claimant herself described, and the ALJ had properly rejected the claimant's testimony. Thus, the additional testimony would not affect the disability determination as a whole, and was no more than harmless error. <u>Id.</u> If, however, the reviewing court cannot confidently conclude that no reasonable ALJ, when crediting the testimony, could reach a different result, then the error is not harmless. <u>Stout v. Comm'r. Soc. Sec. Admin.</u>, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, Defendant argues that the ALJ's error was harmless because the "statement merely mirrors Plaintiff's own allegations, which the ALJ gave good reasons for discounting." (Doc. No. 16 at 6-7). In her opinion, the ALJ only discussed the statements made by Plaintiff to her physicians (AR at 24, citing Exs. 19F and 31F), although the ALJ also heard Plaintiff's testimony at her hearing. It is not clear from those statements that the limitations described by Ms. Podwoski are the same as those described by the Plaintiff.

Furthermore, the ALJ discredited Plaintiff's statements regarding her functional limitations, in part, because they were inconsistent. Thus, Ms. Podwoski's statements may be useful in determining which of those statements more accurately reflect Plaintiff's condition. As Defendant points out, the ALJ likely used these inconsistent statements to make a credibility determination. (Doc. No. 16 at 4). The ALJ did not discuss if Plaintiff's subjective complaints, if accepted, would preclude her from employment.

While the medical evidence on record still weighs against Plaintiff's claims, the Court cannot say with certainty that the additional lay witness testimony would have no effect on the ultimate outcome. Thus, the failure to consider the evidence was not

1 harmless error.  Accordingly, the Court **RECOMMENDS** that Defendants' Motion be
2 **DENIED** as to this claim.

3 While Plaintiff requests a judicial award of benefits, the Court finds that
4 remand for further consideration by the ALJ is the appropriate recourse.  When the
5 ALJ has failed to consider lay witness testimony, the preferable course is to remand
6 for consideration of that evidence.  Stout, 454 F.3d at 1056-57.  An immediate award
7 of benefits is only appropriate when: (1) the ALJ failed to provide legally sufficient
8 reasons for rejecting the evidence; (2) there are no outstanding issues that must be
9 resolved before a determination of disability can be made; and (3) it is clear from the
10 record that the ALJ would be required to find the claimant disabled upon review.
11 Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  As it is not clear that the ALJ
12 would be required to find Plaintiff disabled on review, the Court **RECOMMENDS**
13 that Plaintiff's Motion also be **DENIED** and the matter be **REMANDED** to allow the
14 ALJ to consider the lay witness testimony of Ms. Podwoski.

15 **IV.  Conclusion**

16 As the Court finds that the ALJ committed reversible error by failing to
17 consider lay witness testimony, it is **RECOMMENDED** that both Plaintiff's Motion
18 and Defendant's Motion be **DENIED** and the matter **REMANDED** for further
19 proceedings consistent with this ruling. .

20 This report and recommendation will be submitted to the United States District
21 Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988).
22 Any party may filed written objections with the court and serve a copy on all parties
23 by **July 24, 2012.**  The document shall be captioned "Objections to Report and
24 Recommendation."  Any reply to the objections shall be served and filed by **August 6,**
25 **2012**.
26 / / /
27 / / /
28 / / /

The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: July 3, 2012

Hon. Mitchell D. Dembin
U.S. Magistrate Judge